## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| CORBIN S. GEISER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00041 |
| | § | |
| PHH MORTGAGE CORPORATION dba | § | With Jury Demand Endorsed |
| PHH MORTGAGE SERVICES and | § | |
| NEWREZ, LLC, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Corbin S. Geiser ("Plaintiff"), by and through counsel, for his Complaint against

Defendants PHH Mortgage Corporation dba PHH Mortgage Services ("PHH") and NewRez, LLC

("NewRez") (PHH and NewRez are collectively referred to as the "Defendants"), states as follows:

### I.  INTRODUCTION

1.       Plaintiff claims Defendants, as mortgage servicers, engaged in willful, malicious,

coercive, deceptive and harassing actions against him in furtherance of their efforts to illegally

collect a debt that he did not owe as it had been discharged in his bankruptcy case.   At all relevant

times, Defendants knew: 1) Plaintiff had previously vacated and surrendered the real property

collateral securing the mortgage prior to receiving his bankruptcy discharge; 2) Plaintiff was

subject to the protection of the discharge injunction prohibiting any contact or collection activity

by Defendants; and 3) Plaintiff had previously sued Defendants three (3) times in the United States

District Court for the Eastern District of Texas, Sherman Division, for illegal, *in personam*, post-

discharge collection activity on the subject, discharged mortgage account, which resulted in

settlement agreements between Plaintiff and Defendants.   Subsequently, Defendants, despite

their knowledge of the foregoing, have contacted Plaintiff yet again trying to collect the discharged mortgage debt.  The foregoing actions are part of Defendants' illegal design, implemented by their policies and procedures, to harass and deceive consumers to pay Defendants discharged debt by misrepresenting to them that they still owed such discharged debt or that they had an obligation to take actions to benefit Defendant financially to their detriment.

2.      Plaintiff claims Defendants knowingly, willfully and/or negligently violated: 1) Texas Finance Code § 392.001 *et. seq*., known as the Texas Debt Collection Act (the "TDCA"); 2) the common law against invasion of privacy; 3) the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692 *et seq*.; and 4) the Chapter 13 discharge injunction of the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, and Plaintiff seeks to recover actual, statutory, and punitive damages, and legal fees and expenses against Defendant.

## II. PARTIES

3.      Plaintiff is a natural person residing in Denton County, Texas and a "consumer," as defined by the TDCA, Tex. Fin. Code § 392.001(1), and the FDCPA, 15 U.S.C. § 1692a(3).

4.      Defendant PHH is a foreign company that may be served by delivering citation to its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

5.      Defendant NewRez is a foreign limited liability company which may be served by delivering citation to its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6.      Defendants are "creditors," "debt collectors," and/or "third-party debt collectors" under the TDCA, Tex. Fin. Code §§ 392.001(3), (6) and (7), and the FDCPA, 15 U.S.C. § 1692(6).

7.      The debt at issue that Defendants have been attempting to collect from Plaintiff is a "consumer debt," as defined by the TDCA, Tex. Fin. Code § 392.001(2), and the FDCPA, 15 U.S.C. § 1692.

8.      Defendants are furnishers of consumer credit information to Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively, the "Credit Reporting Agencies" or "CRAs").

### III.   JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334, and 1367, and 15 U.S.C. §§ 1692, *et seq*.

10.     Venue in this district is proper because Defendants transact business in this district and Plaintiff filed his subject bankruptcy in this district, and a substantial part the conduct complained of occurred in this district.

### IV.   FACTUAL ALLEGATIONS

**A.      Prior to Filing His Bankruptcy Case, Plaintiff Vacated the Collateral/Property.**

11.     In or about January 2007, more than five (5) years before he filed his Chapter 13 bankruptcy case, Case No. 12-41235 ("Bankruptcy Case"), in the Eastern District of Texas Bankruptcy Court ("Bankruptcy Court"), Plaintiff surrendered and permanently vacated the real property collateral for the subject loans, which was located at 7716 Fairway Ave. SE #802, Snoqualmie, WA 98065 (the "Property").

12.     Also prior to Plaintiff's filing his Bankruptcy Case, HSBC Bank USA, National Association, as Trustee for Ownit Mortgage Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-4 ("HSBC"), as the owner of the subject debt, through its mortgage servicers on the subject loan and account, City National Bank and Ocwen Loan Service ("Ocwen"), asserted a pre-petition claim against Plaintiff in an attempt to collect a consumer debt he allegedly owed.   The

subject debt required Plaintiff to pay money arising out of transactions of which money, property, insurance, or services were the subject, and the same were primarily for personal, family, or household purposes.

**B.     The Subject Debt Was Discharged as to Plaintiff's Personal Liability in Plaintiff's Bankruptcy Case, and the Subject Collateral Was Surrendered.**

13.     On May 3, 2012, Plaintiff filed a Chapter 13 bankruptcy in case number 12-41235 ("Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Bankruptcy Court").

14.     In his Petition filed in his Bankruptcy Case, Plaintiff listed the subject claim on "SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS" ("Schedule D") as a secured claim, identified as Loan and Account No. xxxxx6530 (the "Loan" or "Account"), with City National Bank and Ocwen listed as the creditors, and listing the Property as the collateral.

15.     A true and correct copy of relevant excerpts from Plaintiff's Schedule D is attached hereto as Exhibit "A" and incorporated herein by reference.

16.     In Schedule D, under the section for "REMARKS" for the Account, Plaintiff noted his "**Surrender**" of the Property.

17.     On May 3, 2012, Plaintiff also filed his Chapter 13 Plan ("Ch. 13 Plan") in his Bankruptcy Case, and again listed the Property as "Collateral to be surrendered" and City National Bank and Ocwen as creditors.

18.     A true and correct copy of relevant excerpts from Plaintiff's Chapter 13 Plan, showing his surrender of the Property, is attached hereto as Exhibit "B" and incorporated herein by reference.

19.     On May 31, 2012, the Bankruptcy Court sent a copy of the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") by first class mail to "City

Ntl Bk/Ocwen Loan Service." The 341 Notice warned all creditors in conspicuous language against violating the automatic stay imposed by 11 U.S.C. § 362. The United States Postal Service did not return the 341 Notice sent to "City Ntl Bk/Ocwen Loan Service," creating a presumption it was received.

20.     A true and correct redacted copy of the 341 Notice is attached hereto as Exhibit "C" and incorporated herein by reference.

21.     On June 29, 2012, Ocwen, as the mortgage servicer for HSBC, the creditor on the subject debt, filed a secured proof of claim for "HSBC Bank USA, National Association c/o Ocwen Loan Servicing, LLC Attn: Bankruptcy Department," Claim No. 7, in the Bankruptcy Case as to the subject claim and Account.

22.     A true and correct copy of relevant portions from the Proof of Claim is attached hereto as Exhibit "D" and incorporated herein by reference.

23.     On November 1, 2012, Plaintiff's Chapter 13 Plan was confirmed.

24.     On November 20, 2012, Ocwen filed a Notice of Appearance in Plaintiff's Bankruptcy Case.

25.     On January 9, 2017, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order"); the Discharge Order followed Official Form 3180W, including the explanatory language contained therein. The order discharged Plaintiff from any personal liability for "debts provided for by the chapter 13 plan," including the subject pre-petition claim. Included with the Discharge Order was an explanation of the general injunction prohibiting those holding pre-petition claims from attempting to collect them. The Discharge Order and its notice warned all creditors, in conspicuous language, that "**Creditors cannot collect discharged debts**" and that "creditors cannot… try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt

personally.   Creditors who violate this order can be required to pay debtors damages and attorney's fees."

26.     On January 11, 2017, the Bankruptcy Noticing Center mailed a copy of the Discharge Order to all creditors and other parties listed on the mailing matrix previously filed with the Bankruptcy Court, including first class mail notice to "City Ntl Bk/Ocwen Loan Service" and electronic transmission to "HSBC Bank USA, National Association, c/o Ocwen Loan Servicing, LLC, Attn: Bankruptcy Department"; these mailings constituted formal notice of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. § 524(a).   These notices were not returned to the Bankruptcy Noticing Center, creating a presumption they were received.

27.     A true and correct redacted copy of the Discharge Order is attached hereto as Exhibit "E" and incorporated herein by reference.

28.     At no time during the pendency of the Bankruptcy Case did Defendants or any other person or entity object to or dispute the details of the subject claim contained in Schedule "D" of Plaintiff's bankruptcy petition.

29.     At no time during the pendency of the Bankruptcy Case did Defendants or any other person or entity assert a deficiency claim against Plaintiff as to the Loan or Account.

30.     At no time during the pendency of Plaintiff's Bankruptcy Case did the Bankruptcy Court declare or hold the subject pre-petition claim to be non-dischargeable.

31.     At no time did Plaintiff reaffirm the subject claim or debt with any person or entity.

**C.     Plaintiff's First Lawsuit Against Defendant Ocwen.**

32.     On or about June 27, 2017, Plaintiff filed a lawsuit against Ocwen captioned *Corbin S. Geiser v. Ocwen Loan Servicing, LLC*, in the United States District Court for the Northern District of Texas, Fort Worth Division, Case No. 4:17-cv-00525-O (hereinafter, the "First

Lawsuit") asserting claims against Defendant for violating Texas state and federal law, based on actions Ocwen took to collect on the Account from Plaintiff after he received his bankruptcy discharge, including sending Plaintiff post-discharge statements, notices and letters on the Account and, and furnishing false, inaccurate information to the CRAs Experian and TransUnion for the Account to be reported on Plaintiff's credit report.

33.     On or about December 28, 2017, Plaintiff and Ocwen entered into a Confidential Settlement and Release Agreement (the "First Settlement") in the First Lawsuit, and, on January 29, 2018, they filed a Joint Stipulation of Dismissal with Prejudice, and the case was dismissed.

**D.     Plaintiff's Second Lawsuit Against Defendant Ocwen.**

34.     On or about July 3, 2018, Plaintiff filed a second lawsuit against Ocwen captioned *Corbin S. Geiser v. Ocwen Loan Servicing, LLC*, in the United States District Court for the Eastern District of Texas, Sherman Division, Case No. Number 4:18-cv-00470-ALM (hereinafter, the "Second Lawsuit") asserting claims against Defendant Ocwen for violating Texas state and federal law, based on actions Ocwen took to collect on the Account from Plaintiff after he received his bankruptcy discharge, including sending Plaintiff post-discharge statements, notices and letters on the Account and, and furnishing false, inaccurate information to the CRAs Experian and TransUnion for the Account to be reported on Plaintiff's credit report.

35.     On or about December 20, 2018, Plaintiff and Ocwen entered into a Confidential Settlement and Release Agreement (the "Second Settlement") in the Second Lawsuit, they filed a Joint Stipulation of Dismissal with Prejudice, and the case was dismissed.

**E.     Plaintiff's Third Lawsuit Against Ocwen and Defendants NewRez and PHH.**

36.     On or about November 20, 2019, Plaintiff filed a third lawsuit against Ocwen and Defendants in the United States District Court for the Eastern District of Texas, Sherman Division entitled *Corbin S. Geiser v. Ocwen Loan Servicing, LLC, et al.*, bearing Civil Action No. 4:19-

CV-00857-ALM, hereinafter to be referred to as (the "Third Lawsuit") asserting claims against Ocwen and Defendants for violating Texas state and federal law, based on actions they took to collect on the Account from Plaintiff after he received his bankruptcy discharge, including sending Plaintiff post-discharge statements, notices and letters on the Account and, and furnishing false, inaccurate information to the CRAs Experian and TransUnion for the Account to be reported on Plaintiff's credit reports.

37.     On or about April 30, 2020, Plaintiff and Defendants entered into a Confidential Settlement and Release Agreement (the "Third Settlement") in the Third Lawsuit, they filed a Joint Stipulation of Dismissal with Prejudice, and the case was dismissed.

**F.     After the Settlement of the Three Lawsuits, Defendants Have Yet Again Attempted to Collect the Discharged Debt on the Account from Plaintiff.**

38.     Despite Defendants' knowledge of the discharge of the debt on the Account in Plaintiff's Bankruptcy Case and the settlement of the three lawsuits, Defendants engaged in prohibited actions against Plaintiff in furtherance of their attempts to illegally collect the discharged debt on the Account from Plaintiff *in personam*, including: 1) sending Plaintiff at least five (5) deceptive correspondences on the Account to deceive and coerce payment from Plaintiff on the discharged Account or for Plaintiff to take actions to financially benefit Defendant(s) to his detriment; and 2) sending Plaintiff statements as if the discharged Account was still open, past-due and owing.

39.     On or about August 17, 2020, NewRez c/o PHH sent Plaintiff a "**monthly mortgage statement**" on the Account.  Although the statement includes a message that the statement is for informational and compliance purposes only, it informs him there is a "**Payment Amount: $271,978.60,**" consisting, in part, of the "**Regular Monthly Payment $2,685.95,**" and "**Payment Date: 9/1/2020**."  It also includes information on how to make a payment, a list of

fees charged for various services, and a detachable payment coupon with PHH's address on it and a blank space for Plaintiff to write the dollar amount of the "**Total check enclosed**." Additionally, the statement informs Plaintiff that "[m]aintaining a property insurance policy with the appropriate coverage and deductible amounts is a required under the Mortgage" and requests Plaintiff provide proof of such coverage; warning that otherwise, PHH or NewRez will purchase lender-placed insurance and the cost of such insurance may be added to the monthly payment amount, if Plaintiff is making payments to keep the mortgage current, or may be recoverable from the proceeds of a foreclosure sale.   The statement goes on to warn Plaintiff that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose" and that "you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."   Additionally, the statement informs Plaintiff under "**Important Information**" that: "**Your regular monthly payment has not been received.   As a result, a late charge has been assessed to your account as shown above.   Please contact our office if you are having financial difficulties.   We want to work with you to preserve your homeownership.**"   The statement also includes an "**Account History**" section showing there was a "**Payment due**" on the first day of every month from March 1, 2020 through September 1, 2020 for the total **unpaid amount of $271,978.60.**   Further, it states "**Total: $271,978.60 unpaid amount that, if paid, would bring your loan current**" and instructs Plaintiff to see the back of the statement for information about mortgage counseling or assistance if he is experiencing financial difficulty.

40.     A true and correct redacted copy of the statement sent August 17, 2020 to Plaintiff is attached hereto as Exhibit "F."

41.     On or about August 20, 2020, Defendant caused Quality Loan Service Corp. of Washington to send Plaintiff a "**Notice to Residents of Commencement of Foreclosure**" and "**NOTICE OF TRUSTEE'S SALE**" indicating that the Property would be foreclosed on January 8, 2021 if a payment in the amount of $300,333.09 was not made by December 28, 2020.   The notice includes the following language: "**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**"

42.     On or about September 16, 2020, NewRez c/o PHH sent Plaintiff a "**monthly mortgage statement**" on the Account.   Although the statement includes a message that the statement is for informational and compliance purposes only, it informs him there is a "**Payment Amount: $276,123.85,**" consisting, in part, of the "**Regular Monthly Payment $2,685.95**," and "**Payment Date: 10/1/2020**."   It also includes information on how to make a payment, a list of fees charged for various services, and a detachable payment coupon with PHH's address on it and a blank space for Plaintiff to write the dollar amount of the "**Total check enclosed**." Additionally, the statement informs Plaintiff that "[m]aintaining a property insurance policy with the appropriate coverage and deductible amounts is a required under the Mortgage" and requests Plaintiff provide proof of such coverage; warning that otherwise, PHH or NewRez will purchase lender-placed insurance and the cost of such insurance may be added to the monthly payment amount, if Plaintiff is making payments to keep the mortgage current, or may be recoverable from the proceeds of a foreclosure sale.   The statement goes on to warn Plaintiff that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose" and that "you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."   Additionally, the statement informs Plaintiff under

"**Important Information**" that: "**Your regular monthly payment has not been received.   As a result, a late charge has been assessed to your account as shown above.   Please contact our office if you are having financial difficulties.   We want to work with you to preserve your homeownership.**"   The statement also includes an "**Account History**" section showing there was a "**Payment due**" on the first day of every month from April 1, 2020 through October 1, 2020 for the **unpaid balance of $276,123.85.   Further, it states "Total: $276,123.85 unpaid amount that, if paid, would bring your loan current**" and instructs Plaintiff to see the back of the statement for information about mortgage counseling or assistance if he is experiencing financial difficulty.

43.     A true and correct redacted copy of the statement sent September 16, 2020 to Plaintiff is attached hereto as Exhibit "G."

44.     On or about October 16, 2020, NewRez c/o PHH sent Plaintiff a "**monthly mortgage statement**" on the Account.   Although the statement includes a message that the statement is for informational and compliance purposes only, it informs him there is a "**Payment Amount: $278,935.60,**" consisting, in part, of the "**Regular Monthly Payment $2,685.95**," and "**Payment Date: 11/1/2020**."   It also includes information on how to make a payment, a list of fees charged for various services, and a detachable payment coupon with PHH's address on it and a blank space for Plaintiff to write the dollar amount of the "**Total check enclosed**." Additionally, the statement informs Plaintiff that "[m]aintaining a property insurance policy with the appropriate coverage and deductible amounts is a required under the Mortgage" and requests Plaintiff provide proof of such coverage; warning that otherwise, PHH or NewRez will purchase lender-placed insurance and the cost of such insurance may be added to the monthly payment amount, if Plaintiff is making payments to keep the mortgage current, or may be recoverable from the proceeds of a foreclosure sale.   The statement goes on to warn Plaintiff that "[t]his

communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose" and that "you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."   Additionally, the statement informs Plaintiff under "**Important Information**" that: "**Your regular monthly payment has not been received.   As a result, a late charge has been assessed to your account as shown above.   Please contact our office if you are having financial difficulties.   We want to work with you to preserve your homeownership.**"   The statement also includes an "**Account History**" section showing there was a "**Payment due**" on the first day of every month from May 1, 2020 through November 1, 2020 for the **unpaid amount of $278,935.95.**   Further, it states "**Total: $278,935.95 unpaid amount that, if paid, would bring your loan current**" and instructs Plaintiff to see the back of the statement for information about mortgage counseling or assistance if he is experiencing financial difficulty.

45.     A true and correct redacted copy of the statement sent on October 16, 2020 to Plaintiff is attached hereto as Exhibit "H."

46.     On or about November 16, 2020, NewRez c/o PHH sent Plaintiff a "**monthly mortgage statement**" on the Account.   Although the statement includes a message that the statement is for informational and compliance purposes only, it informs him there is a "**Payment Amount: $281,747.65,**" consisting, in part, of the "**Regular Monthly Payment $2,685.95,**" and "**Payment Date: 12/1/2020**."   It also includes information on how to make a payment, a list of fees charged for various services, and a detachable payment coupon with PHH's address on it and a blank space for Plaintiff to write the dollar amount of the "**Total check enclosed**."   Additionally, the statement informs Plaintiff that "[m]aintaining a property insurance policy with the appropriate coverage and deductible amounts is a required under the Mortgage" and requests

Plaintiff provide proof of such coverage; warning that otherwise, PHH or NewRez will purchase lender-placed insurance and the cost of such insurance may be added to the monthly payment amount, if Plaintiff is making payments to keep the mortgage current, or may be recoverable from the proceeds of a foreclosure sale.   The statement goes on to warn Plaintiff that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose" and that "you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."   Additionally, the statement informs Plaintiff under "**Important Information**" that: "**Your regular monthly payment has not been received.   As a result, a late charge has been assessed to your account as shown above.   Please contact our office if you are having financial difficulties.   We want to work with you to preserve your homeownership.**"   The statement also includes an "**Account History**" section showing there was a "**Payment due**" on the first day of every month from June 1, 2020 through December 1, 2020 for the **unpaid amount of $281,747.65**.   Further, it states "**Total: $281,747.65 unpaid amount that, if paid, would bring your loan current**" and instructs Plaintiff to see the back of the statement for information about mortgage counseling or assistance if he is experiencing financial difficulty.

47.   A true and correct redacted copy of the notice dated November 16, 2020 sent to Plaintiff is attached hereto as Exhibit "I."

48.   On or about December 16, 2020, NewRez c/o PHH sent Plaintiff a "**monthly mortgage statement**" on the Account.   Although the statement includes a message that the statement is for informational and compliance purposes only, it informs him there is a "**Payment Amount: $$284,559.55,**" consisting, in part, of the "**Regular Monthly Payment $2,685.95**," and "**Payment Date: 1/1/2021**."   It also includes information on how to make a payment, a list of

fees charged for various services, and a detachable payment coupon with PHH's address on it and a blank space for Plaintiff to write the dollar amount of the "**Total check enclosed**." Additionally, the statement informs Plaintiff that "[m]aintaining a property insurance policy with the appropriate coverage and deductible amounts is a required under the Mortgage" and requests Plaintiff provide proof of such coverage; warning that otherwise, PHH or NewRez will purchase lender-placed insurance and the cost of such insurance may be added to the monthly payment amount, if Plaintiff is making payments to keep the mortgage current, or may be recoverable from the proceeds of a foreclosure sale.   The statement goes on to warn Plaintiff that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose" and that "you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."   Additionally, the statement informs Plaintiff under "**Important Information**" that: "**Your regular monthly payment has not been received.   As a result, a late charge has been assessed to your account as shown above.   Please contact our office if you are having financial difficulties.   We want to work with you to preserve your homeownership.**"   The statement also includes an "**Account History**" section showing there was a "**Payment due**" on the first day of every month from July 1, 2020 through January 1, 2021 for the **unpaid amount of $284,559.55.**   Further, it states "**Total: $$284.559.55 unpaid amount that, if paid, would bring your loan current**" and instructs Plaintiff to see the back of the statement for information about mortgage counseling or assistance if he is experiencing financial difficulty.

49.     A true and correct redacted copy of the statement dated December 17, 2019 sent to Plaintiff is attached hereto as Exhibit "J."

## V.   GROUNDS FOR RELIEF - COUNT I

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

50.   Plaintiff repeats re-alleges, and incorporates by reference all paragraphs above, as if fully rewritten here.

51.   Defendants have violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

   a.   Tex. Fin. Code § 392.301(a)(8), which prohibits Defendants from threatening to take an action prohibited by law.  Inasmuch as: 1) the bankruptcy discharge injunction prohibits anyone from attempting to collect debts discharged in bankruptcy *in personam*; and 2) the common law protects Plaintiff's privacy rights; Defendants' actions of sending Plaintiff the letters, notices and statements at issue seeking payment from Plaintiff on the discharged Account, also violated the TDCA, and the post-discharge representations Defendants made to Plaintiff that he may still be liable for the debt as stated in the subject letters, notices and statements violated the bankruptcy discharge injunction which prohibits attempting to collect debts discharged in bankruptcy *in personam*;

   b.   Tex. Fin. Code § 392.303(2) prohibits Defendants from collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.  Inasmuch as Defendants were attempting to charge late fees and inspection and other charges, it violated this section of the TDCA;

   c.   Tex. Fin. Code § 392.304(a)(8), which prohibits misrepresenting the character, extent, or amount of Plaintiff's debt; because Defendants' post-discharge notices, letters and statements at issue misrepresent information to Plaintiff that Plaintiff is liable for the subject discharged debt, which appears collectible by Defendants, was in turn misrepresented to Plaintiff in violation of the TDCA;

   d.   Tex. Fin. Code § 392.304(a)(13) prohibits representing that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if the award of the fees or charges is subject to judicial discretion, as here the post-discharge billing statements, notices and letters at issue represent that Plaintiff owed Defendants for "late fees" and other post-discharge assessed charges to the Account that were continuing

to accrue every month post-discharge. Since 11 U.S.C. § 524 prohibits Defendants from attempting to collect on the discharged debt on the Account, as Plaintiff was no longer personally liable for it upon discharge, for the same reasons stated in the preceding paragraphs, Defendants violated this section of the TDCA; and

e.   Tex. Fin. Code § 392.304(a)(19) prohibits Defendants' use of false representations or deceptive means to collect a debt, for the reasons stated in the preceding paragraphs; Defendants intentionally tried to coerce or deceive Plaintiff into paying the debt, while Defendants knew the Account was discharged in Plaintiff's bankruptcy, rendering the debt legally uncollectible from Plaintiff *in personam*.

52.   Under Tex. Fin. Code Ann. § 392.403, Defendants' actions at issue make them liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees under the TDCA. Also, Plaintiff's injuries resulted from Defendants' malice and/or actual fraud, which entitles Plaintiff to punitive damages.

53.   Due to Defendants' conduct, Plaintiff was forced to hire counsel, and his damages include reasonable attorney's fees incurred in prosecuting his claims under the TDCA.

## VI. GROUNDS FOR RELIEF - COUNT II

### INVASION OF PRIVACY

54.   Plaintiff repeats re-alleges, and incorporates by reference all paragraphs above, as if fully rewritten here.

55.   When Defendants sent Plaintiff the letters, notices and statements at issue, these actions constituted invasions of Plaintiff's private affairs and privacy rights. These invasions were ones that would be highly offensive to a reasonable person, because Defendants were forbidden from contacting Plaintiff to collect on the subject debt after it was discharged as to Plaintiff's personal liability and the Property had been surrendered and vacated by Plaintiff years prior. Plaintiff had a reasonable and lawful expectation not to be contacted and harassed by Defendants during the times at issue, which were post-discharge and after the settlements of the

First, Second and Third Lawsuits.  Defendants' actions at issue were wrongful acts and caused injury to Plaintiff.

56.     Plaintiff's injuries resulted from Defendants' malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code § 41.003(a).

## VII.   GROUNDS FOR RELIEF - COUNT III

## FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

57.     Plaintiff realleges and incorporates herein all of the above paragraphs as if set forth herein in their entirety.

58.     The FDCPA is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties.  *See* 15 U.S.C. § 1692 *et seq*.  The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  *See* 15 U.S.C. § 1692k.  The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

59.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose and forbids debt collectors from taking such action.  The substantive heart of the FDCPA lies in three broad prohibitions.  First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The FDCPA is designed to protect

consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

60.     In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, the loss of jobs, and to invasions of individual privacy."   15 U.S.C. § 1692a.   Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers.   *See* 15 U.S.C. § 1692b.

61.     Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors.   The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."   15 U.S.C. § 1692e.

62.     The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation.   *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3, (2d Cir. 1993); *see also Taylor v. Perrin, Landry, DeLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997).   "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."   *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

63.     The FDCPA is a remedial statute and therefore must be construed liberally in favor of the debtor.  *Sprinkle v. SB&C Ltd*., 472 F. Supp. 1235 (W.D. Wash. 2006).  The remedial nature of the FDCPA requires that courts interpret it liberally.  *Clark v. Capital Credit & Collection Services, Inc*., 460 F.3d 1162 (9th Cir. 2006).   "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. §1601 *et seq*., is a remedial statute, it should be construed liberally in favor of the consumer."  *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

64.     The FDCPA is to be interpreted in accordance with the "least sophisticated consumer" standard.  *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); *Graziano v. Harrison*, 950 F.2d 107, 111 fn5 (3rd Cir. 1991).   The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."  *Id*.   The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naïve and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices.  *See Clomon*, 988 F.2d at 1318.

65.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct.  *See* 15 U.S.C. § 1692 e(1)-(16).

66.     All of Defendant NewRez's post-discharge actions at issue, described hereinabove in the above paragraphs are the manifestation of its practices and policies to ignore the provisions of the Bankruptcy Code applicable to it and illegally collect or attempt to collect debts that have been discharged in bankruptcy *in personam* from unsophisticated debtors.  Moreover, for the

same reasons stated in the preceding paragraphs, Defendant NewRez's actions were deceitful, misleading, harassing, and unconscionable, all by design and taken intentionally against Plaintiff, in violation of the FDCPA.

## VIII.   GROUNDS FOR RELIEF - COUNT IV

### VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

67.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above, as if fully rewritten here.

68.     At all times material to this proceeding, Defendants had actual knowledge about Plaintiff's Bankruptcy Case, the discharge of the debt at issue, Plaintiff's surrender of the Property years prior, and the settlements and dismissals of the First, Second and Third Lawsuits.   Yet, Defendant failed to cease its *in personam* and harassing debt collection activity on the Account and its underlying discharged debt, as evidenced by Defendants' sending Plaintiff the letters, notices and statements at issue.   These acts were harassing and attempts to collect the subject discharged debt from Plaintiff.

69.     Defendants' aforesaid actions were willful acts and constitute efforts to collect a discharged debt from Plaintiff in violation of the discharge injunction of 11 U.S.C. § 524(a). Defendants' failure to comply with the aforesaid law, while being on notice of Plaintiff's Bankruptcy Case and discharge, as well as the legal effect of the discharge under 15 U.S.C. § 1681s-2(a), illustrates Defendants' contempt for federal law.

70.     The totality of the circumstances and the individual actions of Defendants at issue post-discharge, including sending the subject letters, notices and statements to Plaintiff, attempting to coerce or deceive him into making payments on the Account or taking action to financially benefit Defendants to his detriment; constitute gross violations of the discharge injunction set forth in 11 U.S.C. § 524(a)(1)-(3).

71.     The facts and background stated above demonstrate that Defendants knowingly and willfully violated the orders and injunctions of the Bankruptcy Court as they concern the bankruptcy filed by Plaintiff.  With this prima facie showing by Plaintiff, the duty falls on Defendants to show, as their only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability.  Failing a showing by Defendants of a present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on his claims, and Defendants must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court regarding the bankruptcy filed by Plaintiff and his discharge.   Any defense put forth by Defendants in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for its conduct and actions.   Any allegation of a good faith exception should not be allowed.

72.     Defendants violated that part of the Bankruptcy Court's Discharge Order imposed by 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not the discharge of such debt is waived…."

73.     No exceptions exist under 11 U.S.C. § 524 or any other provision of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendants at issue with regard to the discharge injunction, as stated above.

74.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint. None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case.

75.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court.   Any attempt to burden

Plaintiff with policing the misconduct of Defendants would be a complete derogation of the law. It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance.   Any such defense by Defendants in this proceeding would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court, which is prohibited.   Any defense put forth by Defendants in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendants.   No allegation of mitigation as a defense should be allowed.

76.    Plaintiff has been injured and damaged by Defendants' actions and is entitled to recover judgment against Defendants for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. § 524, and pursuant to the Court's powers under 11 U.S.C. § 105.

## IX.  VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

77.    Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendant(s), the principal, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendants for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.   For example, PHH was acting independently and as an agent or representative of NewRez.

## X.  DAMAGES

78.    In addition to any damages previously stated hereinabove, the conduct of Defendants at issue has proximately caused Plaintiff past and future monetary loss and a discernable injury to Plaintiff's emotional state and other damages, evidence for which will be presented to the jury.   Moreover, every offensive and harassing letter, notice or statement at issue

that Defendants sent to Plaintiff and that Plaintiff received, used Plaintiff's time and mental energy, both of which are precious to him.

79.     Plaintiff believes that, after reasonable discovery in this case, he will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of Defendants in the line and scope of such individuals' (or entities') employment, agency, or representation.

80.     Plaintiff believes that, after reasonable discovery in this case, he will be able to show that all actions at issue taken by Defendants were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, and with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were in violation of the law.

81.     At all relevant times, Defendants knew, and continue to know, that a debt included in bankruptcy and discharged in bankruptcy is not legally collectible from the debtor personally, but Defendants have made company decisions to willfully and maliciously act contrary to their knowledge in their calculated decision to violate Plaintiff's legal rights.

82.     Plaintiff believes that, after reasonable discovery in this case, he will be able to show that, despite Defendants receiving dozens, if not hundreds, of disputes complaining about the types of actions at issue, Defendants intentionally and knowingly have not corrected their policies and procedures of engaging in these actions.

83.     Plaintiff believes that, after reasonable discovery in this case, he will be able to show that Defendants have engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with their policies and procedures, with respect to willfully, intentionally, and maliciously by making false and deceptive representations to consumers discharged in bankruptcy, in furtherance of their attempts to illegally collect discharged debt *in personam* from these

consumers by sending them deceptive, coercive and harassing collection letters, notices and statements on discharged accounts Defendants are servicing or to deceive and coerce such consumers to take actions on discharged accounts, to their detriment, to benefit Defendants financially.   Accordingly, Defendants are subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendants.   Moreover, Plaintiff's injuries resulted from Defendants' malice and/or actual fraud, which entitles Plaintiff to punitive damages.

84.     Due to Defendants' conduct, Plaintiff was forced to hire counsel, and Plaintiff's damages include reasonable attorney's fees incurred in prosecuting his claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Corbin S. Geiser prays the Court will:

A.     Enter judgment in favor of Plaintiff and against Defendants, joint and severally, for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendants' violations of the TDCA, his privacy rights, the FDCPA, and the discharge injunction;

B.     Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.     Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.     Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Respectfully submitted,


/s/ James J. Manchee
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

**COUNSEL FOR PLAINTIFF**

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

January 15, 2021                      /s/ James J. Manchee
Date                                              James J. Manchee